# Waddail *v.* Vassar, *et al.*

### Bill to Declare and Enforce Resulting Trust.

#### (Decided May 11, 1916.  72 South. 14.)

1. **Equity; Laches; Prejudice.**—Mere delay which works no disadvantage to another and does not change circumstances in such sense that there can no longer be a safe determination of the controversy will not bar a complainant's right or remedy.

2. **Same; Statute of Limitation.**—Statutes of limitation do not bind the courts of equity where laches is invoked, unless there has been legal adverse possession.

3. **Trusts; Resulting; Parent and Child.**—Where the parent or husband pays the consideration for a conveyance to a child or wife, the presumption of an advancement arises and not a presumption of a resulting trust.

4. **Same; Bill; Establishment.**—Where the bill sought to have a resulting trust declared and alleged that plaintiff paid the consideration to one reared and regarded as a son, to purchase land for her (complainant), and that he had conveyance made to him, it was sufficient to rebut the presumption of advancement arising from the relation.

5. **Same; Laches.**—No hostile, adverse possession prior to the sale being alleged neglect to file bill to establish resulting trust from the time title was taken in the name of another, in 1902 and 1908, until less than two years after respondent undertook to sell, in 1913, some of the land, will not be

[Waddail v. Vassar, et al.]

deemed laches on demurrer which confesses that respondent is the holder of only the dry, legal title.

6. Same.—The establishment of a resulting trust is not defeated on the ground of laches by the conveyance of the land by respondent to his wife on the recited consideration of one dollar, and love and affection, the conveyance being made prior to the filing of the bill, as such conveyance does not confer any greater or different right than the respondent possessed.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Mary L. Waddail against Robert Vassar and others to enforce a resulting trust in land. From a decree for respondent complainants appeal. Reversed and remanded.

LONDON & FITTS, for appellant. J. B. AIRD, and F. E. BLACKBURN, for appellee.

McCLELLAN, J.—(1, 2) This bill, filed by the appellant against the appellees Vassar, among others, seeks to have declared and made effective resulting trusts in several city lots. The demurrers of the Vassars were sustained, on the single ground that complainant's asserted equities have become barred by laches. It has been well decided that mere delay that has wrought no disadvantage to another, or that has not operated to introduce changes of conditions and circumstances in consequence of which "there can be no longer a safe determination of the controversy," will not serve to bar a complainant's right or remedy.—*Snodgrass v. Snodgrass*, 185 Ala. 155, 163, 164, 64 South. 594; *Hauser v. Foley*, 190 Ala. 437, 67 South. 252; *Lucas v. Skinner*, 194 Ala. 492, 70 South. 88. Where the question of laches in the assertion of a right is presented, the facts and circumstances of each case will govern the court in the exercise of the sound discretion thereby invoked for the determination of the inquiry.—*Snodgrass v. Snodgrass, supra; Lucas v. Skinner, supra.* Statutes of limitations do not bind courts of equity in such cases, unless there has been an adverse possession within the law's contemplation.—*Shorter v. Smith*, 56 Ala. 208, 210, 211; *Lucas v. Skinner, supra; Scruggs v. Decatur Land Co.*, 86 Ala. 173, 5 South. 440.

(3) Where the purchase money of land is paid by a parent or husband, the title being taken in the name of the child or wife, "the presumption of intention" on the part of the parent or husband "to become the owner of the property arising from the

payment of the purchase money is rebutted by the stronger counter presumption of an intention to make an advancement to the child or wife." Hence the presumption of a resulting trust does not arise from the mere fact that the purchase money is supplied by a parent or husband, and the title is taken in the name of the child or wife.—*Long v. King*, 117 Ala. 423, 430, 431, 23 South. 534.

(4, 6) It appears from the bill that Robert Vassar, in whose name the title to the several lots in question was respectively taken during the years 1902, 1904, and 1908, was reared as a son by the complainant from the time he, a "motherless infant," came under her care; that each regarded and treated the relation as that of parent and child; that after attaining his majority Vassar and his family lived upon the bounty of the complainant, and he served as the clerk and confidential adviser and assistant of the complainant in a retail business conducted by her, and was not called to any accounting; that this close relation existed during the time the complainant furnished the funds with which to purchase the lots in question; and that these purchases were made at his instance, and the funds of complainants were given to him, upon his suggestion, to purchase "for her" the lots involved. Notwithstanding the familiar rule which requires a pleading, when assailed by demurrer, to be most strongly construed against the pleader, we think the allegations entirely sufficient to overcome the stated presumption, raised by the relation (practically speaking) of parent and child existing at the time between complainant and Vassar, that complainant intended to make advancements to Vassar. Our opinion is that he could not and did not, in fact, purchase the lots "for her" when he took the titles thereto in his own name. It would be a strained and wholly unreasonable interpretation of the allegations of the bill to ascribe to them any meaning not consistent with her intent that he should take her funds and buy the land "for her," necessarily implying that the titles should be conveyed to her. He did not purchase for her if, as is averred, he purchased, with her funds, and had the title conveyed to himself. We can see no reason for concluding the complainant on the ground of laches. There is no allegation of an hostile, adverse possession of any of the lots by Vassar up to the time he first undertook to sell and convey some of them, viz., August 12, 1913, less than two years before this bill was filed. For the purposes of the hearing on the demurrer

the averments of the bill must be taken as true; and so it must be ruled that the complainant was the equitable owner of the property; only the dry legal title thereto being invested in Vassar.. Under these circumstances, in the absence of allegations showing adverse possession of the property by Vassar, no presumption of adverse possession of the property consequent upon or incident to the fact of Vassar's investment with the dry legal title thereto arose to affect the complainant's rights or their appropriate assertion in the premises.—*Shorter v. Smith*, 56 Ala. 208, 210. Aside from the fact that Vassar made sales of the lots on and after August, 1913, there is nothing in the bill indicating that Vassar claimed or held the lots in a right antagonistic to the rights of the complainant. Unless those sales of the property effect to introduce such changes in conditions and circumstances as to create disadvantages to those (ostensible purchasers) whose interests might be now prejudiced by the effectuation of complainant's asserted rights in the premises, there has been no such intervention of changed conditions and circumstances as precludes this complainant on the case made by the averments of the bill. Lots 13, 14, 16, 17, 18, and 20 described in the bill were conveyed by Vassar on August 12, 1913, to Vassar's wife on the recited consideration of "one dollar and love and affection." While the consideration recited was sufficient to support the conveyance as between parties thereto, yet it was not sufficient to clothe the wife, as grantee, with any different or greater right than Vassar himself would have enjoyed in the premises had he not undertaken to convey to her. She did not become a bona fide purchaser for value.—16 Cyc. pp. 165, 166; *Ten Eyck v. Whitbeck*, 135 N. Y. 40, 31 N. E. 994, 31 Am. St. Rep. 809; *Anthe v. Heide*, 85 Ala. 236, 4 South. 380. Hence the conveyance to the wife was but voluntary as against the complainant's equity; and the introduction of the subordinate right passing to the wife under the conveyance did not effect to make such a change in the pertinent conditions and circumstances as to preclude complainant from asserting the equity this bill discloses.—16 Cyc., supra.

There was error in sustaining the demurrer. The decree is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.