On Application for Rehearing
The opinion of December 17, 1993, is withdrawn and this opinion is substituted therefor.
The plaintiff sued to quiet title to the mineral rights as to a certain tract of land. The issues on this appeal are whether the trial court properly held that the Grove Act, § 6-6-560 et seq., Ala. Code 1975, was a valid jurisdictional foundation for the filing of the complaint and, if so, whether the trial court properly applied the rule of repose to extinguish the defendants' mineral interests.
The facts in this case are undisputed. In 1912, W.G. Oehmig owned the surface and mineral rights to 80 acres of land in Tuscaloosa County ("the property").[1] On September 12, 1912, Oehmig conveyed the property to American Lumber and Export Company (ALEC) by a deed in he which expressly reserved the mineral rights.[2] The deed is properly recorded in the probate office of Tuscaloosa County in Deed Book 93 at page 301. On September 28, 1923, ALEC conveyed the property to John T. Bealle by a deed that also expressly reserved the mineral rights.[3] This deed is recorded in the probate office of Tuscaloosa County in Deed Book 147 at page 295. On December 8, 1938, Bealle delivered to Harvey C. Johnson a warranty deed purporting to convey the property in fee simple without any reservation or exclusion of mineral rights. This deed is recorded in the probate office of Tuscaloosa County in Deed Book 192 at page 287. Harvey C. Johnson died in February 1990 after filing this action to quiet title, and his son, Harvey C. Johnson, Jr., was properly substituted as the party plaintiff.
From 1920 to 1989 the property was assessed for ad valorem taxes in fee simple, with no separate assessment for mineral rights, successively by ALEC, John T. Bealle, and Harvey C. Johnson during their periods of ownership. In 1989, before this action was filed, the heirs of W.G. Oehmig ("the Oehmigs")[4]
filed mineral escape tax assessments for tax years 1983-1988 and paid ad valorem taxes on mineral rights for 1989. No minerals were ever extracted from the property by Harvey C. Johnson, his son, or any other party. This action was filed on November 17, 1989.
The case was tried without a jury on January 16, 1991. The trial court entered a judgment for the plaintiff Johnson. The Oehmigs' motion for a new trial was granted, and the judgment was vacated. The parties agreed to resubmit the case to the trial court with another judge now sitting because of the prior judge's retirement.[5] The new judge considered the evidence presented at the prior trial, the pleadings, and the briefs of all *Page 848 
parties.[6] The court ruled that the mineral interests in the property belonged to the plaintiff Johnson, and it entered a judgment quieting his title to those interests.
The Oehmigs first challenge the trial court's holding that the Grove Act, § 6-6-560 et seq., Ala. Code 1975, is a proper jurisdictional foundation for the complaint. The Grove Act has been held to allow actions to clear title to mineral interests.Shelton v. Wright, 439 So.2d 55, 57 (Ala. 1983). An action to quiet title under the terms of the Grove Act may be commenced in any one of the following situations:
 "(1) When the complainant is in the actual, peaceable possession of the lands.
 "(2) When neither the complainant nor any other person is in the actual possession of the lands and complainant has held color of title to the lands, or interest so claimed, for a period of ten or more consecutive years next preceding the filing of the bill, and has paid taxes on the lands or interest during the whole of such period.
 "(3) When neither the complainant nor any other person is in the actual possession of the lands and complainant, [and] those through whom he claims, have held color of title and paid taxes on the lands or interest so claimed for a period of ten or more consecutive years next preceding the filing of the bill.
 "(4) When neither the complainant nor any other person is in the actual possession of the lands and complainant and those through whom he claims have paid taxes during the whole of such period of ten years on the lands or interest claimed, and no other person has paid taxes thereon during any part of said period."
Fitts v. Alexander, 277 Ala. 372, 375, 170 So.2d 808, 810
(1965). The trial court held that Johnson met the burden of proof under situation (2).
Neither party is in "actual possession" of the mineral interests, because the minerals are still in the ground, but Johnson clearly has "color of title," because "color of title" is an instrument that on its face appears to transmit title or the right of possession, although in reality it may not.Black's Law Dictionary 266 (6th ed. 1990); Van Meter v. Grice,380 So.2d 274, 280 (Ala. 1980). The 1938 deed from John T. Bealle to Harvey C. Johnson satisfies this requirement. The last requirement, that the complainant have paid taxes on the land or interest for 10 consecutive years preceding the filing of the complaint, was also met by Johnson and his father. While no separate assessment was made for the mineral rights, if they believed, as their deed purported, that the mineral rights had not been severed, there would be no reason to separately assess mineral rights. Paying ad valorem taxes on the land where there has been no separate assessment for mineral rights is sufficient to satisfy the statute's requirements. To hold otherwise by applying a more restrictive interpretation would frustrate the Grove Act's purpose of clearing up all doubts or disputes concerning land titles. Shelton, 439 So.2d at 57. Cf.Edmonson v. Colwell, 504 So.2d 235, 237 (Ala. 1987) (holding that although the Grove Act is purely statutory and strict compliance with the requirements set forth in it is imperative, payment of the Mineral Documentary Stamp Tax is sufficient compliance with the ad valorem tax requirement, because otherwise a mineral estate owner could not clear title under the Act). Therefore, we hold that the jurisdiction requirements of the Grove Act were met. We also hold that Johnson did not satisfy the requirements of § 6-6-566(c), Ala. Code 1975, which sets forth the means by which title may be established conclusively under the Grove Act, because the Oehmigs made the escape assessments and tax payments before the filing of this action.
The Oehmigs also challenge the trial court's application of the rule of repose. The *Page 849 
trial court said that this rule "serves to bar recognition of the Oehmigs' record title, due to their total inactivity with respect to the same for 76 years, including their omission of the affirmative duty to assess and pay the ad valorem taxes thereon, and as between them and Johnson, title is due to be quieted in Johnson." The rule of repose "operates as an absolute bar to claims that are unasserted for 20 years."Boshell v. Keith, 418 So.2d 89, 91 (Ala. 1982).
 "This principle of repose or prescription is similar to a statute of limitations, but not dependent upon one, and broader in scope. Scott v. Scott, 202 Ala. 244, 80 So. 82 (1918); Patterson v. Weaver, 216 Ala. 686, 114 So. 301
(1927). It is a doctrine that operates in addition to laches. Unlike laches, however, the only element of the rule of repose is time. It is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence [has been] obscured. Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820 (1935); 30A C.J.S., Equity § 113 (1965), at p. 33."
Boshell, 418 So.2d at 91.
The trial court found the facts in the instant case to be "quite analogous" to the facts of Shelton v. Wright,439 So.2d 55 (Ala. 1983). In Shelton, the owner of land, E.B. Tierce, conveyed the mineral interests in the land to C.M. Ayers in 1914. The deed stated that the consideration paid was a promissory note and that Tierce reserved a vendor's lien. In 1915, Tierce conveyed the mineral interests in the same land to W.E. Bowers, who in turn mortgaged the mineral estate to Reuben H. Wright. The mortgage was foreclosed in 1934, with Wright taking title. The individuals in the Bowers-Wright chain of title assessed the mineral interests for ad valorem taxes beginning in 1916 and paid the ad valorem taxes annually, without interruption, until they filed an action to quiet title under the Grove Act. Neither C.M. Ayers nor any of his devisees or the heirs of his devisees assessed the lands for taxation before the complaint was filed. This Court applied the Grove Act and rule of repose to quiet title in the Wright devisees. There are, however, key differences between Shelton and the instant case.
Shelton involved two mineral deeds from the same grantor. In the instant case, Johnson's claim to the mineral rights arises from a deed purporting to convey all rights to the property from John T. Bealle to Johnson's father, when it is clear that John T. Bealle never had ownership of the mineral rights. The plaintiffs in Shelton assessed and paid ad valorem taxes on the mineral interests for more than 60 years, while the defendants paid nothing. The plaintiffs also were able to establish their claim under the provisions of the Grove Act. In this case, the plaintiff Johnson and his predecessors in interest did not separately assess the mineral rights and were not able to establish their claim under the Grove Act. While there was a genuine dispute as to who had legal title to the mineral rights in Shelton, it appeared that the plaintiffs had the better claim to legal title.[7] In the instant case, the trial court found that "[c]learly, the Oehmigs have the better legal title to the disputed mineral interest." Also, Johnson is unable to conclusively establish title under the Grove Act because the Oehmigs paid taxes on the mineral interests before this action was filed. These differences distinguish Shelton from the instant case. Cf. Whitehead v. Hester, 512 So.2d 1297, 1307
(Ala. 1987) ("[W]e find, that the circumstances are different; therefore, Shelton is distinguishable on its facts.").
Furthermore, the Oehmigs contend that another case,Buckelew v. Yawkey, 247 Ala. 304, 24 So.2d 133 (1945), is more on point than Shelton v. Wright. The facts of Buckelew are nearly identical to the facts of the instant case. In that case, the fee simple owner of a tract of land, William C. Yawkey, died. The executors of Yawkey's will conveyed the surface rights in that land to Henderson Lumber Company in 1905, reserving all of the mineral rights to the devisees under the will. In 1910, Henderson Lumber conveyed the land to Tri-County *Page 850 
Land Company. In 1918, Tri-County Land conveyed the land to W.G. Heath. Both the deed to Tri-County and the deed to Heath repeated the reservation of all minerals that had appeared in the original deed by Yawkey's executors. Heath died intestate in 1943, and his heirs conveyed the land by a warranty deed to George Buckelew with no exception for mineral rights. Buckelew then sued to quiet title. This Court held that Buckelew did not own the mineral estate.
Buckelew, like Johnson in the present case, was a surface owner seeking to quiet title against the holders of the legal title to the mineral estate. This Court held inBuckelew that "the holder of legal title remains in constructive possession of the reserved [mineral] estate and rights, and that the possessor of the surface, claiming under conveyance evincing such severance, . . . does not acquire legal title to the minerals no matter how long his possession may continue." Buckelew, 247 Ala. at 307-08,24 So.2d at 135-36. See also Hooper v. Bankhead Bankhead, 171 Ala. 626,633, 54 So. 549, 551 (1911) ("[t]he mineral, after severance, is a corporeal hereditament, and mere nonuser will not affect the owner's title"). This Court also said in Buckelew:
 "G.M. Heath is presumed to have occupied only the surface under his deed from the Tri-County Land Company and, said deed being of record, the complainants, who claim under a conveyance from the widow and heirs of Heath, were chargeable with notice of the character of estate which Heath held; and in the absence of notice to the holders of the legal title to the mineral interests, evinced by active exploitation of the minerals in and under said land, the occupancy of the surface is not adverse; and no matter how long continued, does not ripen into title, nor does the failure of the true owners to exercise the right of taking the minerals, or their failure to assess the land for taxes operate as a forfeiture or waiver of their legal title."
Buckelew v. Yawkey, 247 Ala. at 308, 24 So.2d at 136 (emphasis added).
A more recent case, Whitehead v. Hester, 512 So.2d 1297 (Ala. 1987), also involved the claims of the mineral owners versus the claims of the surface owners, who were claiming complete ownership. Holding in favor of the mineral owners and rejecting the surface owners' argument that the mineral owners' claim should be barred under the rule of repose, this Court said that "the [surface owners], in the exercise of reasonable diligence, should have had adequate notice of the mineral interest claimed by [the mineral owners] and their predecessors." Id. at 1304. We noted that the "chain of title severing the mineral estate from the surface appears in 1892 and has been of record in Franklin County for over ninety years." Id. More importantly, this Court in Whitehead distinguished Shelton, saying thatShelton did not apply "because there was evidence before the trial court in this case [Whitehead] that there was an unbroken chain of title from Sheffield Land, Iron Coal Company from 1892 down to [the current mineral owners]." Whitehead, 512 So.2d at 1307. The same is true in the instant case. There is an unbroken chain of title from W.G. Oehmig to the Oehmigs who are defendants in this action, and Johnson and his predecessors were charged with notice of their title.
The Oehmigs argue that the rule of repose does not apply to this case because the Oehmigs are the undisputed holders of legal title to the mineral rights in the property and because, they say, the rule of repose has never been used to transfer title out of an undisputed legal title holder into another. The Oehmigs contend that the rule of repose cannot affirmatively create title, but is only a defense against stale claims. The rule of repose is "a defensive matter" and "is unlike adverse possession, which affirmatively establishes title." Boshell v.Keith, 418 So.2d 89, 92 (Ala. 1982). The rule of repose has been described as the "running of the period against claims" rather than a device to displace title. Id. (Emphasis in original.) We hold that the rule of repose cannot be used against one with valid record title by one who clearly does not have title.
In this case, there was never any claim of which the Oehmigs should have been aware. The deed giving Johnson color of title under which he now brings this action was not recorded until 26 years after W.G. *Page 851 
Oehmig had conveyed the surface rights and retained the mineral interests that are now in dispute. It was not the responsibility of the Oehmigs to continually check the title records to see if someone had purported to convey their mineral interests. The time for the rule of repose cannot run until there is at least constructive notice of a potential claim. Therefore, the trial court erred in applying the rule of repose to disseise the Oehmigs of their mineral interests in this case.
The Court recognizes that to allow Johnson to prevail in this action, under either the Grove Act or the rule of repose, would encourage the owners of mineral interests to assess and pay taxes on their interests, but we cannot do that. While we do not condone the nonpayment of ad valorem taxes, we must faithfully interpret and apply the laws as they exist. Although Johnson argues that it would be better public policy to quiet the title in him under the facts of this case, neither the statutes passed by the legislature nor the long-standing precedents of this Court allow this result. Furthermore, the state has an effective means of enforcing the tax laws through tax sales of property interests on which taxes have not been paid. See, e.g., Edmonson v. Colwell, 504 So.2d 235 (Ala. 1987) (affirming judgment in favor of tax sale purchasers of mineral interests). It is the duty of the tax assessor to assess the taxes, and, if the taxes are not paid, the state may initiate a tax sale of the property interest. In this case there has been no tax sale, and Johnson has not conclusively proven title under the Grove Act, and the rule of repose does not apply to disseise the Oehmigs of their mineral interests. Therefore, we reverse the judgment and remand this case for the trial court to enter a judgment consistent with this opinion.
OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
HORNSBY, C.J., and STEAGALL, INGRAM and COOK, JJ., concur.
SHORES, J., dissents.
[1] The land is more particularly described as the Northwest Quarter of the Southeast Quarter and the Northeast Quarter of the Southwest Quarter of Section 30, Township 22 South, Range 9 West, in Tuscaloosa County, Alabama.
[2] The clause in the deed reserving the mineral rights stated, "Except the mineral rights of every kind and character that may be in, under and upon said lands, said mineral rights not being sold and the same not being conveyed by this deed."
[3] The reservation clause in this deed stated, "[E]xcepting and reserving, however, from the operation of this deed the mineral[s] and mineral rights of every kind and character that may be in, under and upon said land, said mineral[s] and mineral rights not being sold and the same not being conveyed by this deed. . . ."
[4] The heirs of W.G. Oehmig that are appellants/defendants in this action are Frances Gertrude Oehmig; Daniel W. Oehmig; Von D. Oehmig; Lewis W. Oehmig; William G. Oehmig III; Amy L. Oehmig; Katherine O. Stone; Edward W. Oehmig, Jr.; Frances O. Collins; Dunbar N. Oehmig; and Betty O. Fields.
[5] Judge Joseph Colquitt presided over the trial and granted the motion for a new trial. Because of Judge Colquitt's retirement, Judge Bernard Harwood obtained jurisdiction of this case and rendered the judgment that is the subject of this appeal.
[6] This includes a brief filed by amicus curiae Hawkeye Oil and Gas, Inc. An amicus curiae brief by Hawkeye Oil and Gas was also filed in this Court. Two other amicus curiae briefs were submitted to this Court, one by Drummond Company, Inc., Jim Walter Resources, Inc., United Land Company, USX Corporation, and U.S. Steel Mining Company, Inc., and the other by Torch Energy Corporation, Torch Energy Associates, Nuevo Energy Company, and Velasco Gas Company, Ltd.
[7] We said in Shelton that "[b]ased on these circumstances, the implication arises that the grantor in these two deeds foreclosed his lien against the appellants' predecessors and conveyed the mineral interests to the appellees' predecessors." Shelton, 439 So.2d at 59.