SELLERS, Justice (dissenting).
I respectfully dissent.
In Oehmig v. Johnson, 638 So.2d 846 (Ala. 1994), the purported grantee of real property in fee simple sought to quiet title as against the purported owners of the mineral rights in the property. In discussing the rule of repose, which the grantee had asserted in support of his quiet-title action, this Court said:
"The rule of repose is 'a defensive matter' and 'is unlike adverse possession, which affirmatively establishes title.' Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982). The rule of repose has been described as the 'running of the period against claims' rather than a device to displace title. Id. (Emphasis in original.) We hold that the rule of repose cannot be used against one with valid record title by one who clearly does not have title.
"... It was not the responsibility of the [purported owners of the mineral rights] to continually check the title records to see if someone had purported to convey their mineral interests. The time for the rule of repose cannot run until there is at least constructive notice of a potential claim. ..."
638 So.2d at 850-51.
Oehmig, however, was criticized in Ex parte Liberty National Life Insurance Co., 825 So.2d 758 (Ala. 2002). In that case, this Court indicated that Oehmig was incorrect in suggesting that the rule of repose cannot start to run until there has been "notice" of the claim at issue. 825 So.2d at 764 n.3. The Court, however, did not criticize Oehmig for indicating that the rule of repose cannot "be used offensively (in a manner similar to the concept of adverse possession) 'against one with valid record title by one who clearly does not have title' in order to divest the title owner of property." Id. (quoting Oehmig, 638 So.2d at 850 ).
In Harrison v. Alabama Forever Wild Land Trust, 4 So.3d 1114 (Ala. 2008), however, this Court held that the rule of repose applied in a quiet-title action, which was commenced by a plaintiff claiming to own a parcel of real property more than 20 years after the recording of a deed that, if valid, would defeat the plaintiff's claim to ownership. The property at issue in Harrison was originally granted to Greenberry Williams, Sr., by the United States government in 1848. In 1856, Greenberry Williams, Sr., conveyed the property to one of his sons, Ausker. In 1907, a deed was recorded by which Ausker's brother, Greenberry Williams, Jr., purported to convey the property to J.T. Crotts and P.B. Worley. There was, however, no deed whereby the property had been conveyed to Greenberry Williams, Jr. The plaintiff in Harrison disputed the validity of the 1907 deed from Greenberry Williams, Jr., to Crotts and Worley, suggesting that it was a "forgery." 4 So.3d at 1116-18. He claimed that the property actually had "passed down through the Ausker Williams family pursuant to the 1856 deed by which Greenberry Williams, Sr., conveyed the property to Ausker Williams." 4 So.3d at 1116. After the 1907 deed to Crotts and Worley was recorded, multiple additional deeds, which purported to convey *972 the property to various grantees, were executed and recorded. In 2002, the property was conveyed to the Alabama Forever Wild Land Trust ("the Trust Fund"), which was named as a defendant in the quiet-title action.
The trial court in Harrison entered a judgment in favor of the Trust Fund. On appeal, this Court held that the rule of repose applied to the plaintiff's claim of ownership:
"The Trust Fund claims ownership of the property by way of the 1907 deed whereby Greenberry Williams, Jr., transferred the property to Crotts and Worley. That deed was properly recorded in Colbert County, and [the plaintiff's] ancestors were accordingly on notice as of that date that another party claimed an interest in the property. See § 35-4-63, Ala. Code 1975 ('The recording in the proper office of any conveyance of property or other instrument which may be legally admitted to record operates as a notice of the contents of such conveyance or instrument without any acknowledgment or probate thereof as required by law.'). Nevertheless, none of those ancestors took any steps to contest the 1907 deed. Rather, it was not until 2005-98 years after the 1907 deed was recorded-that [the plaintiff] initiated the present action to quiet title to the property. During those 98 years in which [the plaintiff] and his ancestors 'slept upon their rights' and took no action to quiet title to the property, 'the memory of transactions ... faded and parties and witnesses passed away.' Boshell [v. Keith, 418 So.2d 89, 91 (Ala. 1982) ] (emphasis omitted). Indeed, [the plaintiff] has raised the possibility that the 1907 deed was a forgery; however, the parties that might have personal knowledge of the circumstances surrounding the execution and filing of that deed have almost certainly all passed away. These are precisely the facts for which the rule of repose was fashioned, and that rule accordingly serves as an absolute bar to [the plaintiff's] action."
4 So.3d at 1118 (footnote omitted).
Relying on the circumstances and the reasoning in Harrison, I would conclude that, in 1964 when James recorded a deed purporting to convey the entire 40-acre property to Joseph in fee simple, the 20-year rule of repose began to run. That recording put Felix's heirs on notice that "another party claimed an interest in the property." Harrison, 4 So.3d at 1118. The rule of repose creates finality by barring claims after an established period. That finality is important because memories fade and parties and witnesses pass away. Id. (citing Boshell v. Keith, 418 So.2d 89, 91 (Ala. 1982) ).
I also note that the record indicates that, in 1980, other family members were involved in conveyances with persons in the relevant chain of title, who claimed to own the property at issue. Thus, it appears that the appellees had knowledge at that time of a dispute regarding ownership of the property. The appellees, however, took no action until 2011. We should not reward parties who sleep on their rights and fail to take actions to protect their interests in real property. The rule of repose prevents parties who here have some 30 years' prior notice of a possible dispute as to ownership from bringing suit to establish title. Accordingly, I would reverse the trial court's judgment.